**In re HARNISCHFEGER
INDUSTRIES, INC.,
et al., Debtors.**

**Rockwell International Corporation,
Appellant,**

**v.**

**Harnischfeger Industries,
Inc., Appellee.**

**Bankruptcy No. 99–2171(PJW).
No. CIV.A.03–607–KAJ.**

United States District Court,
D. Delaware.

Nov. 1, 2003.

Kathleen Marshall DePhillips, Pachulski, Stang, Ziehl, Young & Jones, PC, Wilmington, DE, for Debtor/Appellee.

Jonathan L. Parshall, Murphy, Spadaro & Landon, Wilmington, DE, for Appellant.

Daniel K. Aston, Wilmington, DE, U.S. Trustee.

## MEMORANDUM ORDER

JORDAN, District Judge.

## I. INTRODUCTION

Presently before this court is an appeal by Rockwell International Corporation ("Rockwell") from the May 16, 2003 Order of the bankruptcy court sustaining Harnischfeger Industries, Inc. ("Debtor" or "HII") objection to Rockwell's claim number 7082 (Docket Item ["D.I."] 10, Ex. M at 0785; the "Order."). For the reasons that follow, that Order is affirmed.

## II. BACKGROUND

### A. Statement of the Facts

This appeal arises out of the May 16, 2003 Order disallowing Rockwell's claim number 7082. (D.I. 10, Ex. M at 0785.) Claim number 7082 was filed on February 25, 2000, against HII in the amount of $32,131,333.39, $29,631,333.39 of which is attributed to a corporate guarantee allegedly made by HII. (D.I. 9, Ex. A at 0003–10.)

In 1997, Beloit, a subsidiary of HII, was hired to supply approximately $600,000,000 worth of machinery to a third party who was constructing a paper plant. (Id., Ex. 13 at 0319.) Beloit subsequently contracted with numerous vendors, including Rockwell, to supply the needed parts. (Id., Ex. 17.) The contract between Beloit and Rockwell called for the purchase of $38,446,350 worth of machinery to be used in the construction of the paper plant. (Id.) Under the terms of the agreement between Rockwell and Beloit, Beloit was obligated to pay 5% of the purchase price upon issuance of the purchase order, with the remaining payments scheduled to correspond with manufacturing dates. (Id.)

In 1998, another party that had contracted with Beloit for the building of the equipment ran into financial difficulty and consequently it suspended its contract with Beloit. (Id., Ex. 13 at 0316; Ex. 14 at 0336–37.) Rockwell continued to manufacture the supplies Beloit had ordered, but Beloit refused to accept delivery of those parts so Rockwell placed the already com-

pleted parts in storage. (*Id.*, Ex. 16 at 0395.)

In January of 1999, Beloit and Rockwell began discussing how to handle the manufacturing and payment of the previously placed order. (*Id.*, Ex. 12 at 0293–94; Ex. 17 at 0453.) Subsequently, Beloit cancelled its orders with Rockwell and entered negotiations on cost mitigation and creating a payment plan. (*Id.*, Ex 12 at 0289–97; Ex. 16 at 0420–10.) On May 4, 1999, Beloit and Rockwell discussed terms of the proposed payment plan and Rockwell requested that Hll guarantee Beloit's payments. (D.I. 10, Ex. 1 at 0537.) Beloit's president informed Rockwell that the issue of an Hll guarantee should not stand in the way of a settlement. (D.I. 9, Ex. 14 at 0345–46.) No representatives for Hll were present at the meeting, however. (D.I. 10, Ex. 1 at 0537.)

Shortly thereafter, Beloit's vice president sent Rockwell a letter stating that "Harnischfeger will provide a corporate guarantee .... Documentation supporting this will be provided as part of the payment plan agreement." (*Id.*, Ex. 9 at 0579.) Rockwell alleges that, on June 2, 1999, one of its representatives called Beloit's representatives to inform them that they accepted the Hll guarantee and the May 4 payment plan. (D.I. 7 at 11.) To support that allegation Rockwell produced a summary of the telephone call. (D.I. 9, Ex. 8 at 0227.) According to Beloit, however, no final agreement was reached with Rockwell on the settlement. (D.I. 11 at 11–12.)

### B. *Procedural History*

On June 7, 1999, Hll and Beloit filed for bankruptcy. On January 22, 2001, Hll informed Rockwell and the bankruptcy court that Hll objected to Rockwell's claim against it and that it would file a brief to that effect. (D.I. 9, Ex. C at 0035–36.)

Hll also requested that the bankruptcy court have a hearing to decide the issue before a stock distribution planned for June of that year. (*Id.*) Rockwell, however, explained that it needed time to conduct depositions. (*Id.* at 0037.) In response, the bankruptcy court granted Rockwell 30 days to file a response to Hll's motion. (*Id.* at 0037–42.) The parties again appeared before the bankruptcy court on June 11, 2002, and Rockwell requested more time to complete its discovery and file its response. (*Id.*, Ex. E at 0167–74.) The bankruptcy court granted Rockwell until July 11, 2002 to file its brief. (*Id.* at 0174.)

On July 12, 2002, the parties again met in bankruptcy court and discussed Rockwell's claim. (*Id.*, Ex. F at 0181–92.) Rockwell requested an extension to conduct further discovery. (*Id.* at 0187–92.) The bankruptcy court granted the extension and ordered Rockwell to file its answering brief by August 11, 2002. (*Id.* at 0191–92.) On August 13, 2002, Rockwell filed its brief. (*Id.*, Ex. G.) On September 24, 2002, Hll filed its reply brief. (D.I. 10, Ex. H.)

The parties next appeared before the bankruptcy court at a November 4, 2002 Omnibus Hearing. (*Id.*, Ex. J.) At the hearing, the judge stated that he had not read the parties' briefing, but that it appeared there were many "significant factual allegations based upon depositions *et cetera*, by Rockwell." (*Id.* at 0691.) The judge then said that if the motions were not "appropriate for summary judgment, then I'll simply, at one of our hearings, indicate we'll have to have an evidentiary hearing." (*Id.* at 0703.) Upon Rockwell's request, the bankruptcy court granted Rockwell permission to file a sur-reply brief. (*Id.* at 0703; Ex. K.) Rockwell filed the sur-reply on November 14, 2002. (*Id.*, Ex. K.) At a January 10, 2003 hearing, the bankruptcy court again told the parties

that it planned to treat the motions as summary judgment motions. (*Id.*, Ex. L at 0741–42.) Counsel for Rockwell stated to the judge that "[a]t this point we're just awaiting a ruling on the motion for summary judgment, or a determination by the Court that further hearing or evidentiary hearing is necessary." (*Id.* at 0741.) The judge, after a request for argument on the merits, stated, "typically I don't schedule summary judgment motions for argument until I've read the papers." (*Id.* at 0741.)

The bankruptcy court issued its Opinion and Order disallowing Rockwell's claim on May 16, 2003, without holding an evidentiary hearing. (*Id.*, Ex. M.) The main thrust of the Opinion was that there was no written agreement between the parties satisfying the statute of frauds and that the two sides had not come to a final agreement at the time of HII's filing for bankruptcy. (*Id.*) To come to this conclusion, the bankruptcy court appears to have resolved a number of factual issues. (*Id.*) At the beginning of its Opinion the bankruptcy court states that "[t]hese communications provide the fact pattern associated with the negotiations and the outcome of this dispute rests on the interpretation of, and the weight assigned to, these communications." (*Id.*, Ex. M at 0765.) There appear to be numerous findings of fact throughout the Opinion, and the bankruptcy court never refers to its Opinion as a determination of summary judgment. (*Id.*, Ex. M.) On May 23, 2003, Rockwell filed its Notice of Appeal. (*Id.*, Ex. N.)

## III. STANDARD OF REVIEW

■ This court has jurisdiction over appeals from the bankruptcy court pursu-

ant to 28 U.S.C. § 158(a). On appeal, this court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.1999). When reviewing mixed questions of law and fact, this court will accept the bankruptcy court's finding of "historical or narrative facts unless clearly erroneous, but [will] exercise plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir.1991) (internal quotations omitted).

## IV. DISCUSSION

Rockwell maintains that the bankruptcy court committed reversible error when it resolved issues of material fact after committing to decide the motions under a summary judgment standard. (D.I. 7 at 16–18.) Rockwell then goes on to cite a litany of cases explaining that a court cannot decide factual issues at the summary judgment stage. (*Id.*) Rockwell, however, proffers no case law to support its argument that the bankruptcy court is bound to the decision to treat the motions at issue under a summary judgment standard.

The real question is whether the notice given to Rockwell and the subsequent hearings were adequate to satisfy the requirement of the bankruptcy code that objections to claims will be resolved after notice and a hearing.[1]

■ The term "after notice and a hearing" is defined in Title 11 of United States

---

**1.** The text of 11 U.S.C. § 502(a)(b) reads, in pertinent part:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) ... if such objection to a claim is made, the court, *after notice and a hearing*, shall determine the amount of such claim ....

11 U.S.C. § 502(a)(b) (emphasis added)

Code § 102(1) to mean "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances . . . ." 11 U.S.C. § 102(1). The policy of Section 102 is to permit the court flexibility, while ensuring that all parties have proper notice. *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana,* 347 F.3d 589, 594 (5th Cir.2003) (citing COLLIER ON BANKRUPTCY, (15th ed.) 102.02).

■ Additionally "[w]here a matter has already been adequately argued before the bankruptcy judge, and the judge determines that no further hearings are necessary, then the debtor's due process rights are not violated when the judge decides the issue without further hearings." *In re Sullivan Cent. Plaza I, Ltd.,* 935 F.2d 723, 727–28 (5th Cir.1991); see *In re Lease–A–Fleet,* 1995 WL 743666, *5–*6, 1995 U.S. Dist. LEXIS 18607, *17–19 (E.D.Pa.1995) (holding that, where the court has an adequate factual record before it, an evidentiary hearing is unnecessary).

■ In the instant case, Rockwell was afforded a hearing in which to argue its position, Rockwell attended at least five hearings and discussed the propriety of its claim in at least four of those hearings. (D.I. 9, Ex. C at 0035–42, Ex. E, 0164–75, Ex. F at 0182–92; D.I. 10, Ex. J at 0690–704, Ex. L at 0738–42.) Rockwell was afforded ample time to conduct discovery and deposed six witnesses. (D.I. 9, Ex. 10–15.) Additionally, Rockwell was permitted to file a sur-reply brief. (D.I. 10, Ex. K.)

Nevertheless, Rockwell now argues that the bankruptcy court "pulled the rug out" from under it when the court changed the standard it used to rule on the motions. (D.I. 15 at 3.) It is true that the bankruptcy court's decision to not apply a summary judgment standard put Rockwell in a less favorable position than it would have enjoyed had it had the benefit of the presumption required under that standard. However, that does not mean Rockwell was not afforded proper notice and a hearing to present its case. Reading Rockwell's briefs to the bankruptcy court, it is clear that Rockwell made arguments to influence factual determinations. (D.I. 9, Ex. G; D.I. 10, Ex. K.) Rather than asserting that its arguments raise an issue of material fact. Rockwell was apparently trying to persuade the bankruptcy court to make a factual ruling in Rockwell's favor. (*Id.*) Thus Rockwell was participating with its eyes open in a process it apparently expected would lead to a resolution of its claim. It does not appear that Rockwell withheld vital information under the assumption that its motion would be decided under a summary judgment standard.

Consequently, I hold that the notice given to the Rockwell and the hearings attended by Rockwell where it argued its case on the merits, coupled with the extensive record it developed through discovery and presented in the briefs it submitted to the Bankruptcy court, constitute adequate "notice and a hearing."

Not only is this result fair under these circumstances, it serves the interests of judicial economy. Rule 1001 of the Federal Rules of Bankruptcy Procedure states that, under title 11 of the United States Code, all "rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." FED. R. BANK. P. 1001. Rockwell argues that, given the opportunity, it would have submitted additional affidavits and its witnesses would have unequivocally testified that Beloit's offer was accepted. (D.I. 15 at 5.) Rockwell apparently wants an evidentiary hearing to merely reiterate what is already contained in its briefs and the record it presented to the bankruptcy court. A remand would therefore needlessly strain judicial resources, cause an

unnecessary impediment to completion of the bankruptcy, and waste the parties' time and money.

As the bankruptcy court's factual determinations in this matter are not clearly erroneous, and because the decision rendered by the bankruptcy court on May 16, 2003 followed the requisite notice and opportunity to be heard, the bankruptcy court's decision was appropriate.

## V. CONCLUSION

Accordingly, it is hereby ORDERED that the May 16, 2003 Order of the bankruptcy court is AFFIRMED.